IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK WINGER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No.  19-cv-474-RJD |
| | ) |
| MOHAMMED SIDDIQUI, AIMEE LANG, | ) |
| SGT. HARRIS, WEXFORD HEALTH | ) |
| SOURCES INC., and STEPHEN RITZ, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

**DALY, Magistrate Judge:**

Now before the Court is the Motion for Summary Judgment on Exhaustion filed by Defendants Dr. Stephen Ritz and Wexford Health Sources, Inc. (Doc. 30). For the reasons set forth below, the Motion is **DENIED**.

**Background**

Plaintiff Mark Winger, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). More specifically, Plaintiff alleges officials acted with deliberate indifference in the issuance of a double-cuff permit, and in their treatment of Plaintiff's complaints of chest pain. A threshold review of Plaintiff's complaint was completed pursuant to 28 U.S.C. § 1915A, and he is proceeding on the following claims:

    Count One:    Sergeant Harris, Nurse Lang, and Dr. Siddiqui used, authorized, or condoned the use of excessive force against Plaintiff on March 23, 2017, in violation of his Eighth Amendment rights.

  Count Two:  Sergeant Harris and Nurse Lang committed assault and/or battery against Plaintiff on March 23, 2017, in violation of Illinois state law.

  Count Three:  Dr. Siddiqui, Nurse Lang, Dr. Ritz, and Wexford exhibited deliberate indifference to Plaintiff's complaints of chest pain and shortness of breath on or before March 23, 2017, in violation of his Eighth Amendment rights.

Defendants Dr. Ritz and Wexford filed a motion for summary judgment arguing Plaintiff failed to exhaust his remedies as to the claims against them prior to filing this lawsuit (Doc. 30). Defendants assert there are two grievances related to the allegations in this lawsuit and neither was properly exhausted.

  **1. January 1, 2017 Grievance (Doc. 31-1 at 2-11)**:  In this grievance, Plaintiff writes that Dr. Siddiqui referred him for a cardiac stress test during his physical because of his complaints of shortness of breath and family history of heart disease, diabetes, and high blood pressure. Plaintiff complains that Dr. Ritz "of Wexford" denied the referral. Plaintiff asserts the denial of this referral is deliberate indifference to a potential serous medical need. The counselor responded to this grievance on January 31, 2017. Attached to Plaintiff's complaint is a letter dated April 16, 2017 directed to the Grievance Officer complaining that he submitted an appeal of this grievance to the Grievance Office on February 16, 2017, but had not received any response (Doc. 2 at 70). The Grievance Office sent Plaintiff a memorandum dated April 18, 2017 indicating it had not received the described grievance and advising it had answered all grievances received from Plaintiff (Doc. 2 at 71). Over one year later, on June 29, 2018, Plaintiff wrote a letter to the Menard Records Department requesting a copy of this grievance (Doc. 31-1 at 8). The Records Department responded that it did not have a copy of his January 1, 2017 grievance (*Id.*). Subsequently, on July 25, 2018, Plaintiff wrote a letter directed to the Grievance Officer explaining he filed a timely appeal of his January 1, 2017 grievance on February 19, 2017, but

never received a response (Doc. 31-1 at 6).  In his letter, Plaintiff writes he should be excused from filing his appeal now because it was originally timely filed and due to "possible shenanigans by Menard staff" the Grievance Office did not receive it or failed to address it.  On August 18, 2018, the Grievance Office returned Plaintiff's appeal (via his July 25, 2018 letter) stating it was not submitted in the timeframe outlined in Department Rule 504 and it would not be addressed further.  Plaintiff appealed this response to the Administrative Review Board ("ARB").  The ARB received it on September 10, 2018, and responded without a decision on the merits on September 14, 2018.  The ARB indicated it was not submitted in the timeframe outlined in Department Rule 504 and would not be addressed further.

**2**. **April 6, 2017 Grievance (Doc. 31-1 at 12-20)**:   In this grievance, Plaintiff complains that Nurse Lang interfered with his medical consultation with Dr. Siddiqui on March 23, 2017.  Plaintiff complains that while he was trying to explain to Dr. Siddiqui that he was experiencing chest pain and pressure on his chest Nurse Lang interjected and told Plaintiff to put in for sick call because Plaintiff was only there to renew his medical permits.  Plaintiff states that Dr. Siddiqui and Dr. Trost have recommended he receive a stress test, but in December 2016 Dr. Ritz instructed the medical staff to monitor Plaintiff on site.  Plaintiff also writes that Nurse Lang instructed Sgt. Harris to force his wrists into handcuffs despite Plaintiff having a double-cuff permit.

Plaintiff's counselor responded to this grievance on April 27, 2017, and the Grievance Officer recommended that it be denied on May 31, 2017.  The CAO concurred with the Grievance Officer's recommendation on June 2, 2017.  Plaintiff appealed the institutional responses to the ARB.  The ARB denied the grievance on September 6, 2017, finding the issue was appropriately addressed by the facility administration.  The ARB also indicated that the issues from 2016 were past the timeframe for review.

In response to Defendants' motion, Plaintiff argues his administrative remedies were unavailable with regard to his January 1, 2017 grievance because the Grievance Officer never responded, and it was likely lost due to misconduct by prison officials. Plaintiff argues his January 1, 2017 grievance exhausts the claims against Wexford because it states that "Dr. Ritz's decision is likely based solely on money," which would relate to a Wexford cost-cutting policy. Plaintiff explains he resubmitted his January 1, 2017 grievance to the Grievance Officer after speaking with Counselor Rowold who advised Plaintiff to take such action. The Grievance Officer still returned Plaintiff's grievance as out-of-time.

With regard to his April 6, 2017 grievance, Plaintiff contends his complaints about Dr. Ritz and Wexford reflected an ongoing concern and, as such, the ARB should have responded to this issue.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on July 30, 2020. At the hearing, Plaintiff testified he filed two relevant grievances while at Menard. As mentioned above, these grievances were dated January 1, 2017 and April 6, 2017.

With regard to the January 1, 2017 grievance, Plaintiff testified it was timely submitted to his counselor and he received the counselor's response on or about January 31, 2017. Plaintiff testified he deposited this grievance in the grievance box directed to the Grievance Office on or about February 15, 2017. Plaintiff wrote a kite to the Grievance Officer on April 16, 2017 inquiring why he had not received a response to his January 1, 2017 grievance. The Grievance Officer responded that it had not received Plaintiff's January 1, 2017 grievance. Plaintiff testified he did not resubmit this grievance after receiving the Grievance Officer's response because there were no instructions to do so and, if he had, he believed it would have been rejected for being

out-of-time. Over a year later, on July 25, 2018, Plaintiff submitted this grievance for review to the Grievance Office, which rejected it for being submitted beyond the allowable timeframe. Plaintiff testified his administrative remedies became unavailable when this grievance was lost or not responded to by the Grievance Office after he submitted it in February 2017.

Grievance Officer Kelly Pierce also testified at the hearing. Pierce testified that the Grievance Office's logs only recorded one grievance from Plaintiff during the relevant time. This grievance was logged by the Grievance Office in February 2017 and concerned the law library. Pierce also testified that if Plaintiff had resubmitted his January 1, 2017 grievance after receiving the Grievance Office's response that it had not received the grievance, it could have been good cause for an untimely appeal. Pierce testified that there was no good cause for an untimely review of Plaintiff's resubmission of his grievance in July 2018 because of the amount of time that had lapsed since its original submission and Plaintiff's notice that the grievance had not been received by the Grievance Office.

## Legal Standards

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Exhaustion Requirements*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a

decision on the grievance.  *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision.  *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).  The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal.  20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer.  *Id.* § 504.840.  If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.  *Id.*  Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.  *Id.* at § 504.870.

## **Discussion**

Based on the evidence in the record and arguments set forth by the parties, the Court finds Plaintiff exhausted his administrative remedies as to Dr. Ritz and Wexford prior to filing this lawsuit.

The parties agree there are two relevant grievances in the record.  The first, dated January 1, 2017, was submitted to Plaintiff's counselor and Plaintiff received the counselor's response on January 31, 2017.  The Court finds Plaintiff's testimony that he submitted this grievance for review to the Grievance Office in February 2017 credible.  Indeed, Plaintiff's testimony as to this

issue is corroborated by the submission of his letter directed to the Grievance Officer dated April 16, 2017 with Plaintiff's complaint in this matter. Plaintiff's testimony, and his corroborating letter, support the finding that Plaintiff submitted his January 1, 2017 grievance with the counselor's response to the Grievance Office in a timely manner, but never received any response. While the Court acknowledges Defendants' position that Plaintiff should have resubmitted this grievance after receiving the Grievance Officer's memorandum dated April 18, 2017 (in which the Grievance Office indicated it had not received Plaintiff's January 1, 2017 grievance), Plaintiff was not given any such directive and there is no directive to take such action in the Illinois Administrative Code. Further, while the Court acknowledges Kelly Pierce's testimony that the Grievance Officer would have reviewed the grievance had Plaintiff resubmitted it soon after receipt of the April 18, 2017 memorandum, there is again nothing in the Code that would have required that action to be taken. Accordingly, the Court agrees that Plaintiff was thwarted in his efforts to exhaust his January 1, 2017 grievance. The Court also mentions that Plaintiff's delayed resubmission of this grievance in 2018 is of no consequence as Plaintiff was not required to perfect exhaustion of administrative remedies that had become unavailable.

The Court also finds the contents of this grievance is sufficient to exhaust the claims against Dr. Ritz and Wexford as Plaintiff clearly writes that Dr. Ritz of Wexford denied his 11/17/2016 referral for a stress test, and remarks that "Dr. Ritz's decision is likely based solely on money," referencing a cost-over-case policy of Wexford.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment on Exhaustion filed by Defendants Dr. Stephen Ritz and Wexford Health Sources, Inc. (Doc. 30) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: August 4, 2020**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**