IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK WINGER, ) | |
|     Plaintiff, ) | |
| v. ) | Case No.   19-cv-474-RJD |
| MOHAMMED SIDDIQUI, AIMEE LANG, ) SGT. HARRIS, WEXFORD HEALTH ) SOURCES, INC., and STEPHEN RITZ, ) | |
|     Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

    Plaintiff Mark Winger, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard").  More specifically, Plaintiff alleges Menard officials responded to his request for a double-cuff permit and treatment for chest pain with deliberate indifference.

    Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he was allowed to proceed on the following claims:

    Count One:    Sgt. Harris, Nurse Lang, and Dr. Siddiqui used, authorized, or condoned the use of excessive force against Plaintiff related to the cuffing of Plaintiff behind his back on March 23, 2017 in violation of the Eighth Amendment.

    Count Two:    Sgt. Harris and Nurse Lang committed assault and/or battery against Plaintiff on March 23, 2017 in violation of Illinois state law related to the cuffing of Plaintiff behind his back.

    Count Three:    Dr. Siddiqui, Nurse Lang, Dr. Ritz, and Wexford exhibited deliberate indifference to Plaintiff's complaints of chest pain and shortness of breath on or before March 23, 2017 in violation of his Eighth Amendment rights.

This matter is now before the Court on the Motion for Summary Judgment filed by Defendants Dr. Mohammed Siddiqui, Dr. Stephen Ritz, and Wexford Health Sources, Inc. (Doc. 117) and the Motion for Partial Summary Judgment filed by Defendants Richard Harris and Aimee Lang (Doc. 121). Plaintiff responded to both motions (Doc. 127). Defendants filed replies (Docs. 131, 132). For the reasons set forth below, the Wexford Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and the IDOC Defendants' Motion for Summary Judgment is **GRANTED**[1].

## Factual Background

At all times relevant Plaintiff was incarcerated at Menard Correctional Center ("Menard") (Deposition of Mark Winger, Doc. 118-1 at 10). During a routine physical examination with Defendant Dr. Siddiqui on November 27, 2016, Plaintiff self-reported dyspnea (difficult or labored breathing) on exertion, dyslipidemia (unhealthy levels of lipids or fat in the blood), and a family history of coronary artery disease (Declaration of Defendant Mohammed Siddiqui, M.D., Doc. 118-2 at ¶ 5; Plaintiff's Medical Records, Doc. 118-5 at 223-24). Dr. Siddiqui referred Plaintiff to Wexford Health Source's Collegial Review for a cardiac stress test due to Plaintiff's self-reported complaints and family history (*id.*). Collegial Review is part of the utilization management process of Wexford and allows on-site medical physicians to discuss patient care and recommendations for on-going care with Wexford utilization management physicians (Declaration of Defendant Stephen Ritz, D.O., Doc. 118-3 at ¶ 5).

Dr. Trost, who is not a defendant, presented Plaintiff to Collegial Review for a cardiac

---

[1] Defendants Harris and Lang filed a motion for summary judgment asserting they are entitled to judgment as a matter of law on Plaintiff's claim of deliberate indifference set forth in Count Three. For clarification, Defendant Harris was not named as a defendant in Count Three and it is not clear why Harris moved for summary judgment on this claim. Thus, any assertion that Harris is entitled to summary judgment on Count Three is moot.

stress test on November 30, 2016 (Doc. 118-2 at ¶ 7; Doc. 118-5 at 220).  It was noted in Plaintiff's medical records that Dr. Ritz canceled the call and would render a decision after reviewing the case (*id.*).  Dr. Ritz does not recall why the Collegial Review call was canceled, but a call is typically canceled due to illness (either Dr. Ritz or the Site Medical Director), vacation, or facility lockdown (Doc. 118-3 at ¶ 9).

On December 1, 2016, Plaintiff underwent an EKG that showed sinus bradycardia (slow heartbeat) of 56 beats per minute, but was otherwise normal (Doc. 118-2 at ¶ 8; Doc. 118-5 at 247-48).  Many patients with sinus bradycardia, especially with mild sinus bradycardia like Plaintiff, do not require treatment (Doc. 118-3 at ¶ 10).

Dr. Ritz completed the referral regarding the request for Plaintiff to undergo a cardiac stress test on December 2, 2016 (Doc. 118-5 at 225).  Dr. Ritz indicated the request was for a patient with symptoms of dyspnea on exertion, with a negative chest x-ray[2] and a heart rate of 50 per EKG (*id.*).  Dr. Ritz requested a copy of the EKG and a copy of Plaintiff's Medication Administration Record for review (*id.*).  The site Medical Director was to re-present this case to Collegial Review with the requested information (*id.*).  Dr. Ritz's decision was noted in Plaintiff's medical record on December 7, 2016 (*id.* at 220).  Plaintiff was informed by Dr. Trost around this time that he was denied for a cardiac stress test (Doc. 127 at 58-59).

Plaintiff submitted a grievance on January 1, 2017 complaining that his cardiac stress test referral was denied (Doc. 127 at 59).  Plaintiff attests that he is aware of other inmates at Menard who had their physician's referrals for a cardiac stress test denied by Dr. Ritz and Wexford (*id.*).  Plaintiff's deposition testimony references one other inmate who, Plaintiff asserts, experienced his

---

[2] It is not clear based on the record before the Court what x-ray Dr. Ritz reviewed or when it was taken.

same symptoms, was also denied for a cardiac stress test, and ultimately died a few days later (Doc. 118-1 at 38).

Plaintiff's case was discussed again in Collegial Review with Dr. Trost and Dr. Ritz on December 30, 2016 (Doc. 118-5 at 227-28). The cardiac stress test referral request was denied (*id.*). Plaintiff was to be seen by Dr. Trost who was to then consult with Dr. Garcia, the Wexford cardiologist (Doc. 118-2 at ¶ 10; Doc. 118-5 at 227-28).

Plaintiff saw Dr. Trost again on January 9, 2017, wherein Dr. Trost noted that Plaintiff complained of dyspnea and chest pressure on exertion (Doc. 118-5 at 90). Plaintiff also advised Dr. Trost that his father and brother had stents placed in their 50s (*id.*). Dr. Trost ordered another EKG and prescribed HCTZ (diuretic that treats high blood pressure and fluid retention), Zocor, and Mobic (NSAID) (*id.*; Doc. 118-2 at ¶ 11). Plaintiff underwent another EKG per Dr. Trost's orders on January 12, 2017, and it showed a slow heart rate of 54 beats per minute (Doc. 118-5 at 249). The cardiologist determined that it was a normal EKG with normal sinus rhythm (*id.*).

On January 23, 2017, Plaintiff was informed by Dr. Trost via institutional mail that his case was re-discussed at Collegial Review with Dr. Ritz, and his referral for a cardiac stress test was denied (Doc. 127 at 14). Plaintiff was informed that he was to be evaluated again by Dr. Trost and Dr. Garcia, the cardiologist, would be consulted (*id.* at 60). Plaintiff asserts he was not evaluated by Dr. Trost, Dr. Ritz, or Dr. Garcia from the date he was notified the referral had been denied until March 23, 2017 (*id.*). Plaintiff further asserts there is no indication these physicians consulted with Dr. Garcia at any time (*id.*). Dr. Trost left his position at Menard in March 2017 (Doc. 118-2 at ¶ 14).

On March 18, 2017, Plaintiff was seen on nurse sick call and requested a renewal of his low bunk permit and double cuff permit that were set to expire in April 2017 (Doc. 118-5 at 90).

The nurse referred Plaintiff to a provider for renewal of these permits (*id.*). Dr. Siddiqui saw Plaintiff on March 23, 2017 and noted Plaintiff's request for a low bunk permit and double cuff permit (*id.* at 92). Dr. Siddiqui noted Plaintiff experienced chronic right shoulder pain and that Plaintiff did not qualify for a low bunk permit (*id.*). Dr. Siddiqui renewed Plaintiff's double cuff permit (Doc. 118-5 at 80, 92). There is no notation in the record that Plaintiff complained of chest pain or difficulty breathing on this date. If Plaintiff had reported such symptoms, Dr. Siddiqui attests that he would have documented the complaints in his medical note, as is his custom and practice, and he would have conducted an examination to ensure Plaintiff was not having a medical emergency (Doc. 118-2 at ¶ 16).

Plaintiff's description of this March 23, 2017 encounter differs substantially from Dr. Siddiqui's description. Plaintiff attests that just prior to his appointment with Dr. Siddiqui he began experiencing chest pressure and shortness of breath (Doc. 127 at 61). Plaintiff asserts he advised Dr. Siddiqui of these symptoms and explained that Dr. Trost had referred him for a cardiac stress test, but that said referral was denied and that the Wexford cardiologist was supposed to be consulted regarding Plaintiff's case (*id.*). Dr. Siddiqui told Plaintiff that Wexford did not want to pay the money for a cardiac stress test (*id.*). During this interaction with Dr. Siddiqui, Plaintiff was interrupted by Defendant Nurse Lang who indicated Plaintiff was only there for renewal of his permits and told Plaintiff he would need to put in a kite for sick call if he was having other issues (*id.* at 61-62). Plaintiff asserts he told Lang the EKG machine was nearby so they could easily complete an EKG, and she reiterated that Plaintiff was not there for that issue and he should submit a kite (*id.* at 62). According to Plaintiff, Dr. Siddiqui also told Plaintiff to "put in a kite" and then subsequently failed to document his complaints of chest pressure and shortness of breath (*id.*).

Plaintiff testified that at this point, Lang told Dr. Siddiqui Plaintiff was "full of shit" and Defendant Sgt. Harris stepped into the room because he heard Lang raising her voice (Doc. 118-1 at 81). At his deposition, Plaintiff testified that Lang told Sgt. Harris that Plaintiff was complaining that he could not "cuff up," to which Harris responded that Plaintiff has been doing "this shit" for years and that Harris could get him in handcuffs (*id.*). Plaintiff testified that Harris then proceeded to force his hands into handcuffs, despite it causing Plaintiff's body to shake and Plaintiff telling Harris it was hurting him (*id.* at 81-83). Lang was shouting at Plaintiff to bend his elbow while Harris was cuffing him (Doc. 127 at 63-64). Plaintiff does not dispute that Dr. Siddiqui ultimately issued him a double cuff permit (*id.* at 64). Plaintiff submitted the affidavit of another inmate, Alan Wyman, who attests that he witnessed Harris forcing Plaintiff into a single cuff at the direction and with the support of Lang (*id.* at 22).

Dr. Siddiqui asserts that he has no memory of the events described by Plaintiff, including an officer roughly grabbing Plaintiff's arms and pulling them behind his back on March 23, 2017 (Doc. 118-2 at ¶ 17). Dr. Siddiqui indicates he would have remembered such an incident and it is his custom and practice to complete an incident report if such treatment is witnessed (*id.*). Dr. Siddiqui asserts that he did not use, authorize, or condone the use of excessive force against Plaintiff (*id.*).

Plaintiff asserts Harris' actions on March 23, 2017 exacerbated his shoulder pain, and his shoulder still aches more than it did prior to the incident (Doc. 127 at 65). Plaintiff also asserts he has lost considerable range of motion in his right arm and has difficulty falling asleep and staying asleep (*id.* at 70).

Following Plaintiff's encounter with Dr. Siddiqui on March 23, 2017 through his transfer to Western Illinois Correctional Center on August 26, 2019, Plaintiff was seen over two dozen

times by medical providers at Menard (*see* Doc. 118-5 at 93-197).  Some of these appointments are not relevant to the issues in this lawsuit.  Plaintiff was, however, regularly seen in the hypertension and dyslipidemia chronic clinic and was prescribed various medications to address these issues while at Menard (*see* Doc. 118-5).  Notably, in response to Plaintiff's self-report of a chest skeletal injury to non-defendant NP Moldenhauer on August 7, 2017, he underwent an x-ray that showed borderline, but stable cardiomegaly (enlarged heart) with the impression there was no active pulmonary disease (Doc. 118-2 at ¶¶ 27-28; Doc. 118-5 at 110, 144).  Plaintiff also underwent two more EKGs on February 25, 2019 and May 17, 2019 (Doc. 118-5 at 14-15).  Both again evidenced sinus bradycardia, but were otherwise normal (*id.*).  Dr. Siddiqui would have ordered further testing or prescribed medications as medically necessary if the EKG results were abnormal (Doc. 118-2 at ¶ 42).

With regard to Plaintiff's double-cuff permit, the Court finds it was renewed by Dr. Siddiqui on February 22, 2018 and again on February 19, 2019 (Doc. 118-5 at 85, 119, 139). Plaintiff requested a front-cuff permit on June 24, 2019, and after consulting with security regarding this request, said permit was issued with an expiration of August 12, 2019 (*id.* at 184).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

### Count One – Eighth Amendment Excessive Force Claim against Defendants Harris, Lang, and Siddiqui

Plaintiff alleges Defendants Harris, Lang, and Siddiqui used, authorized, or condoned the use of excessive force on March 23, 2017 when Harris placed Plaintiff into single-handcuffs behind his back at the direction of Lang while Dr. Siddiqui watched.

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." *Outlaw*, 259 F.3d at 837 (quoting *Hudson*, 503 U.S. at 7). Prison officials who fail to take reasonable steps to intervene and prevent the use of excessive force may be liable under the Eighth Amendment. *Wilburn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018) (citing *Young v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

Harris and Lang concede there are disputes as to material facts regarding this claim against them and therefore, do not seek summary judgment as to Count One.

Dr. Siddiqui, however, asserts he did not use, authorize, or condone the use of excessive force against Plaintiff.  In support of his argument, Dr. Siddiqui asserts he has no memory of the incident allegedly occurring on March 23, 2017 regarding the single-cuffing of Plaintiff.  In any event, Dr. Siddiqui argues that as a medical provider he generally must defer to the expertise of security officials and in this instance, Plaintiff has not established Dr. Siddiqui had any responsibility to intervene in a security officer's determination of whether a cuffing permit was necessary.

In viewing the evidence in the light most favorable to Plaintiff, the Court must credit Plaintiff's testimony that while he was requesting a renewal of his double-cuff permit from Dr. Siddiqui, Nurse Lang and Officer Harris interjected and Harris proceeded to force Plaintiff into a single-cuff despite Plaintiff indicating it was causing him pain and ultimately exacerbated his shoulder injury.  According to Plaintiff, Harris' efforts were completely unnecessary as security personnel did not need to be involved in the cuffing decision.  Also, based on Plaintiff's account, Dr. Siddiqui was present throughout the incident, but failed to take any action to abate the same. Although the undersigned certainly agrees with the court in *Shuhaiber v. Dart*, No. 1:18-CV-01301, 2022 WL 900192, at *4 (N.D. Ill. Mar. 27, 2022), that medical professionals must generally defer to the professional expertise of security officials when it comes to matters of jail security, there is no evidence that Harris' actions in this instance related to jail security.  Indeed, Dr. Siddiqui has not presented any evidence that security needed to be involved in the cuffing permit decision on March 23, 2017.  Plaintiff attests that no member of the security staff has ever participated in evaluating him for a double-cuffing permit, aside from Harris' involvement in the event at issue (Doc. 127 at 68).  Without evidence that the cuffing decision and Harris' attempt to single-cuff Plaintiff in this instance was related to jail security, there remain genuine disputes of

material fact as to whether Dr. Siddiqui's failure to act or respond to Harris' forcible single cuffing of Plaintiff on March 23, 2017 was a failure to intervene under the Eighth Amendment.

***Count Two – Illinois State Law Assault and Battery Claim against Defendants Harris and Lang***

Defendants Harris and Lang concede there are disputes as to material facts concerning Plaintiff's Illinois state law claims set forth in Count Two and, as such, they do not seek summary judgment on Count Two.  Plaintiff shall therefore proceed on his claims in Count Two against Defendants Harris and Lang.

***Count Three – Eighth Amendment Deliberate Indifference Claim against Defendants Ritz, Lang, Siddiqui, and Wexford***

Plaintiff alleges Defendants were deliberately indifferent to his complaints of chest pain and shortness of breath on or before March 23, 2017.  Defendants assert Plaintiff's complaints and heart conditions were adequately monitored and treated and Plaintiff was treated based on their education, training, skills, and experience.

The Supreme Court recognizes that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind."  *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*,

546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

As a preliminary matter, the Court finds no argument by any defendant that Plaintiff's complaints of chest pain and shortness of breath do not constitute serious medical needs under the Eighth Amendment. As such, the Court finds this point conceded at this time.

The record, when viewed in the light most favorable to Plaintiff, establishes that Plaintiff first complained to Dr. Siddiqui of shortness of breath in November 2016. On December 1, 2016,

Plaintiff received an EKG that showed sinus bradycardia at 56 beats per minute, but was otherwise normal. Dr. Siddiqui submitted a referral for a stress test to Wexford's Collegial Review that was ultimately denied by Dr. Ritz in December 2016. Dr. Ritz requested a copy of Plaintiff's medication administration record and EKG and Plaintiff's case was to be re-presented once such materials were provided. Plaintiff's case was again discussed in Collegial Review with Dr. Ritz and Dr. Trost on December 30, 2016. The referral for a cardiac stress test was denied and Plaintiff was to be evaluated by Dr. Trost who would then consult with the Wexford cardiologist. Plaintiff saw Dr. Trost for similar complaints of chest pressure in January 2017 and he underwent another EKG that was normal aside from Plaintiff's sinus bradycardia. In crediting Plaintiff's testimony, he next made complaints of chest pressure and shortness of breath on March 23, 2017 to Dr. Siddiqui, but these complaints were not addressed. Plaintiff continued to make complaints of the same nature and was seen by various medical providers who monitored him in the chronic clinic for hypertension and dyslipidemia. Plaintiff also underwent two additional EKGs in February and May 2019 that returned normal results aside from Plaintiff's previously documented sinus bradycardia. Also, a chest x-ray showed borderline, but stable cardiomegaly with no active pulmonary disease. Dr. Siddiqui attests that the treatment he provided to Plaintiff was, and is, the right way to treat his symptoms and is the best care and treatment for the same (Doc. 118-2 at ¶ 62).

This record establishes that Plaintiff regularly sought treatment and was examined by Defendant Dr. Siddiqui as well as other medical providers, including Dr. Trost and NP Moldenhauer, on many occasions to address his complaints of chest pressure and shortness of breath. Plaintiff underwent numerous EKGs that showed consistently normal results and did not indicate a need for further testing. Plaintiff's lab work throughout this time was also normal and

did not warrant further investigation. Plaintiff was regularly seen in the chronic care clinic for cardiac issues that were closely monitored and treated with prescription medication.

Based on the foregoing, the Court cannot find that Defendants Ritz, Siddiqui, or Lang acted with deliberate indifference either on or before March 23, 2017. While the Court acknowledges Plaintiff's testimony that Dr. Siddiqui and Lang failed to address his complaints of chest pain and shortness of breath on March 23, 2017, there is no indication their failure resulted in any harm. A review of the record establishes Plaintiff commonly sought medical treatment for these complaints and said complaints were investigated through diagnostic tools, including EKGs and lab work, both before and after March 2017. There is no evidence that Plaintiff experienced substantial pain or that any delay caused by Dr. Siddiqui and Lang's purported failure to immediately address these complaints on March 23, 2017 resulted in any injury or delay in diagnosis for a reasonable jury to find their actions rose to a level of deliberate indifference. Further, the fact that Plaintiff's complaints persisted despite medical evaluation and treatment does not evidence deliberate indifference on the part of Defendants. *See e.g. Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

While Plaintiff clearly disagrees with the course of treatment rendered by Dr. Siddiqui and other medical providers at Menard, and he was apparently frustrated by the difficulties met by medical providers in ameliorating his symptoms, it is well-established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403,

409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). There is no evidence that Defendants' prescribed course of treatment was "blatantly inappropriate," even if Plaintiff was not referred for a cardiac stress test. Rather, the evidence demonstrates that Plaintiff was examined multiple times and, in consultation with, or at the direction of other physicians, referred for EKGs and lab work in an attempt to treat his complaints. In Dr. Siddiqui's medical judgment, the results of these tests did not warrant further testing or treatment. Although Plaintiff's medical treatment was apparently unsuccessful in resolving his symptoms, the record fails to demonstrate that such lack of success was the result of deliberate indifference of Dr. Siddiqui, Lang, or Dr. Ritz.

For these reasons, the Court finds summary judgment in favor of Defendants Dr. Siddiqui, Dr. Ritz, and Lang is warranted as to Count Three.

With regard to Wexford, Plaintiff alleges it was deliberately indifferent to his complaints insofar as it maintained a policy or practice to prioritize healthcare costs over inmates' cardiac healthcare. More specifically, Plaintiff alleges Wexford denies referrals for cardiac stress tests. Plaintiff asserts this theory is supported based on statements made by medical providers, including Dr. Siddiqui, and evidence of another inmate who suffered from similar complaints and was also denied a cardiac stress test.

In order for Plaintiff to recover on his policy claim against Defendant Wexford, he must offer evidence that his injury was caused by a policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy, that was implemented by Wexford. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). Plaintiff must also show that Wexford was aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect him. *Thomas v. Cook County Sheriff's Dept.*,

604 F.3d 293, 303 (7th Cir. 2009). Finally, the policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal citations omitted).

Wexford first asserts it cannot be liable if Dr. Siddiqui and Dr. Ritz were not deliberately indifferent, citing *Pyles v. Fahim*, 771 F.3d 403 (7th Cir. 2014). The Court disagrees with this proposition. The Seventh Circuit in *Pyles* only briefly considered this issue, stating that "Wexford cannot be held liable for damages because there is no underlying constitutional violation." 771 F.3d at 412. The Court finds the Seventh Circuit's explanation for limitations on *Monell* liability more aptly described in *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293 (7th Cir. 2010). In *Thomas*, the Seventh Circuit indicated that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent verdict*." *Thomas*, 604 F.3d at 305 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)). In *Thomas*, the Seventh Circuit remarked that in order to determine whether the county's liability was dependent on its officers, it would consider the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth. *Id.*

In this instance, it is clear based on the record that the medical treatment rendered to Plaintiff was within constitutional boundaries. As set forth above, Plaintiff's complaints were addressed on many occasions and various diagnostic tools were employed. Results from lab work and Plaintiff's EKGs did not require additional testing. As such, there is no evidence to find any policy or practice attributable to Wexford that caused Plaintiff injury or rose to the level of deliberate indifference. As such, Wexford is entitled to summary judgment on Count Three.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Dr.

Mohammed Siddiqui, Dr. Stephen Ritz, and Wexford Health Sources, Inc. (Doc. 117) is **GRANTED IN PART AND DENIED IN PART**, and the Motion for Partial Summary Judgment filed by Defendants Richard Harris and Aimee Lang (Doc. 121) is **GRANTED**.

The Clerk of Court shall enter judgment in favor of Defendants Dr. Stephen Ritz and Wexford Health Sources, Inc. and against Plaintiff at the close of this case.

Plaintiff shall proceed on the following claims:

Count One:  Sgt. Harris, Nurse Lang, and Dr. Siddiqui used, authorized, or condoned the use of excessive force against Plaintiff related to the cuffing of Plaintiff behind his back on March 23, 2017 in violation of the Eighth Amendment.

Count Two:  Sgt. Harris and Nurse Lang committed assault and/or battery against Plaintiff on March 23, 2017 in violation of Illinois state law related to the cuffing of Plaintiff behind his back.

**IT IS SO ORDERED.**

**DATED: March 27, 2023**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**